IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

THE CORNUCOPIA INSTITUTE, DOMINIC
MARCHESE, and REBECCA GOODMAN,

        Plaintiffs,                              OPINION AND ORDER

                                                            16-cv-246

    v.

UNITED STATES DEPARTMENT OF
AGRICULTURE and TOM VILSACK,

        Defendants.
_____

       Plaintiffs The Cornucopia Institute, Dominic Marchese and Rebecca Goodman filed this action seeks a declaratory judgment that defendants United States Department of Agriculture ("USDA" or "the Department") and Tom Vilsack, in his capacity as the Department's Secretary, violated the Organic Foods Production Act of 1990, the Administrative Procedure Act, and the Federal Advisory Committee Act. Specifically, plaintiffs claim that defendants violated each of these statutes in appointing two members to the National Organic Standards Board ("NOSB"). Plaintiffs further seek injunctive relief in the form of an order (1) vacating those appointments and (2) removing certain substances from the Board's "National List" of prohibited organic substances and permitted synthetic substances for purposes of labeling a food "organic," each of which plaintiffs claim would have been removed under a previous procedural rule.

       In response, defendants have moved to dismiss all claims for lack of subject matter jurisdiction on the grounds that plaintiffs lack standing. Alternatively, defendants ask the court to dismiss all claims for failure to state a claim upon which relief can be granted, on

1

the grounds that plaintiffs' claims are nonjusticiable. Because plaintiffs lack standing to sue, the court will grant defendants' motion.

ALLEGATIONS

A. The Parties

The Cornucopia Institute is "a public interest organization that engages in research and education on agriculture and food issues" and "focuses on assessing the integrity of organic food and agriculture." (Am. Compl. (dkt. # 17) ¶ 33.)[1] Cornucopia consists of a board in charge of directing the organization's policy and "thousands of members," including "certified organic farmers, former members of the NOSB, and conservationists." (*Id.* at ¶¶ 34, 35.)

Plaintiff Dominic Marchese is a member of Cornucopia and a certified organic farmer from Farmdale, Ohio. Marchese applied to be a member of the NOSB in 1992, 2009 and 2011, but was not selected. Plaintiff Rebecca Goodman is a certified organic farmer from Wonewoc, Wisconsin. Goodman also applied for an appointment to the NOSB in 2014, but was not selected.

Defendant USDA is a federal agency headquartered in Washington, D.C., responsible for, among many other things, administering the National Organic Production Program, including appointments to its Board. Defendant Tom Vilsack was the Secretary of Agriculture, responsible for the operations of the USDA, until his resignation in January 2017. Michael Young is the current Acting Secretary of Agriculture. Given the court's

---

[1] Cornucopia's website indicates it is a 501(c)(3) corporation. The Cornucopia Institute, https://www.cornucopia.org/about-us/ (last visited May 11, 2017).

decision to dismiss this case, there is no need to substitute Young for Vilsack.

   B. **Statutory Background**

The Organic Foods Production Act of 1990 ("OFPA") provides that the Secretary of Agriculture "shall establish a National Organic Standards Board (in accordance with the Federal Advisory Committee Act) . . . to assist in the development of standards for substances to be used in organic production and to advise the Secretary on any other aspects of the implementation of this chapter." 7 U.S.C. § 6518(a). The OFPA requires that the NOSB be composed of 15 members, and it also specifies that set numbers of its membership will come from certain groups of individuals. *Id.* § 6518(b). In particular, it requires that: four members are "individuals who own or operate an organic farming operation"; two are "individuals who own or operate an organic handling business"; one is an individual who operates a retail establishment with significant trade in organics; three are conservationists; three members represent "public interest or consumer groups"; one is a scientific expert in certain relevant fields; and one is an organic certifying agent. 7 U.S.C. § 6518(b)(1)-(7).

Among its duties, the NOSB develops the National List of Allowed and Prohibited Substances ("National List"). 7 U.S.C. § 6518(k)(2). The National List identifies certain synthetic substances that may be used in organic production and certain natural substances that are prohibited for use in organic production. If adopted by the Secretary, the NOSB's recommendations for the National List will determine what substances can be used in production of food that is labeled "organic" under the USDA organic program. *See* 7 U.S.C. § 6517(a), (e).

3

The Federal Advisory Committee Act ("FACA") requires that federal advisory committees be "fairly balanced in terms of the points of view represented and the functions to be performed[.]" 5 U.S.C. App. 2 § 5(b)(2). Moreover, any legislation establishing a federal advisory committee must "contain appropriate provisions to assure that the advice and recommendation of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest[.]" *Id.* § 5(b)(3).

The Administrative Procedure Act ("APA") grants judicial review of agency action to persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute[.]" 5 U.S.C. § 702. More specifically, APA § 704 provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. Finally, APA § 706 grants courts power to set aside agency actions that are "arbitrary, capricious, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

### C. Defendants' Alleged Conduct

Plaintiffs' claims arise from two, separate courses of conduct by defendants that plaintiffs allege violated these statutory requirements and resulted in harm to plaintiffs: (1) the appointments of two individuals, Carmela Beck and Ashley Swaffar, to the NOSB, both of whom plaintiffs allege are unqualified; and (2) certain changes to NOSB procedures.

#### 1. The Beck and Swaffar Appointments

For the term beginning January 2012, USDA appointed Beck to a position on the NOSB reserved for an individual who "own[s] or operate[s] an organic farming operation"

4

under OFPA § 6518(b)(1). Beck works as the National Organic Program Supervisor and Organic Certification Grower Liaison for Driscoll's, a "conventional and organic berry producer." (Am. Compl. (dkt. #17) ¶ 80.) Plaintiffs contend that this position is insufficient to qualify Beck as an owner or operator of an organic farming operation. In her position on the NOSB, Beck has allegedly voted 177 times to retain a substance on the National List when the other "farmer members" have voted to remove it. (*Id.* at ¶ 82.) Plaintiffs claim that: Beck's voting record demonstrates that her interests do not align with the interests of organic farmers; and Beck was appointed to the NOSB in a year in which plaintiff Marchese applied for a position and was denied.

In 2014, USDA appointed Swaffar to another of the NOSB open seats reserved for individuals who own or operate an organic farming operation. Swaffar previously worked for Arkansas Egg Company, a "conventional and organic egg production company," where she had a variety of responsibilities including financial planning, product development, industry relations and compliance. (*Id.* at ¶ 86.) She now works for Vital Farms, a company that contracts with farmers and markets conventional and organic eggs. Like Beck, Swaffar has allegedly voted 165 to retain a substance on the National List when the other farmer members voted to remove it. As with Beck, plaintiffs claim that Swaffar's experience does not qualify her as an owner or operator of an organic farming operation, and her voting record demonstrates that her interests do not align with organic farmers. Swaffar was appointed to the NOSB the same year in which plaintiff Goodman applied for a position and was denied.

Plaintiffs allege that these appointments violate FACA's "fairly balance" requirement and "undermine[] the integrity of organic foods standards" -- ultimately

5

making consumers less likely to purchase organic foods and resulting in economic loss to plaintiffs.  (*Id.* at ¶¶ 53, 56.)

### 2. Changes to NOSB Procedures

Plaintiffs further allege that certain USDA actions led to increasing USDA influence over the NOSB, "undermining the committee's independence and power."  (Am. Compl. (dkt. # 17) ¶ 90.)  In September 2013, USDA instituted new rules governing the procedure for removing substances from the National List without a notice and comment period.  Under the new "Sunset Review" rules, a substance *remains* on the National List unless two-thirds of the NOSB votes to remove it.  Under the previous rules, substances were automatically *removed* from the list after five years unless two-thirds of the NOSB voted to retain it on the list.  These changes, plaintiffs allege, have resulted in "an increase in the number of harmful synthetic substances left on the National List, and . . . therefore, acceptable for use in organic agriculture."  (*Id.* at ¶ 96.)  The changes have also put a financial strain on Cornucopia, which considers oversight of USDA's administration of organics programs "essential to [its] mission."  (*Id.* at ¶ 41.)  Cornucopia reviews and reports to its members on each chemical on the National List, at an expense to the organization of approximately $600 per substance.  Additional substances left on the National List, therefore, result in additional expense to Cornucopia.

In February 2014, USDA eliminated the NOSB's Policy Development Subcommittee and its Policy and Procedures Manual.  Plaintiffs allege that this move was an effort by USDA to "set its own work plan, requiring all of the NOSB's work to be preapproved by USDA."  (*Id.* at ¶ 106.)  Sometime after May 2015, the NOSB also

switched from a roll call vote to a vote by show of hands, making it more difficult for plaintiffs to track how individual board members voted.

According to plaintiffs, the sum effect of these actions has been excessive USDA influence over the NOSB and an "NOSB hostile to the public interests it was created to protect." (*Id.* at ¶ 20.)

OPINION

Plaintiffs state their claims in four counts: (1) the appointments of Beck and Swaffar violate the OFPA and the APA because they are not "owners or operators of organic farming operations"; (2) the appointments violate FACA and the APA because they violate the balanced membership and viewpoints requirements; (3) the Department inappropriately influenced the NOSB in violation of FACA and the APA; and (4) the Department's failure to comply with FACA § (5)(b) violates FACA and the APA. Defendants counter that plaintiffs lack standing to bring any of these claims, and that the suit must be dismissed for lack of standing. For the reasons set forth below, the court agrees.[2]

In order to satisfy Article III's standing requirement, individual plaintiffs, Marchese and Goodman, must prove three elements: (1) they have suffered an "injury in fact" that is both "concrete and particular" and "actual or imminent"; (2) that injury is "fairly traceable" to defendants' conduct; and (3) "the injury will [likely] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal

---

[2] As explained at the outset, defendants also contend that plaintiffs' claims are nonjusticiable, but the court need not reach that issue in light of plaintiffs' lack of standing.

citations omitted). As an organization, Cornucopia may demonstrate standing by establishing either standing to sue in its own right or standing to sue on behalf of its members. To demonstrate standing to sue on its own behalf, Cornucopia must show the same three elements as an individual asserting standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). To demonstrate associational standing to sue on behalf of its members, an organization must show: (1) its members would have standing to sue; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) its claims do not require participation of individual members. *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. To withstand a challenge to standing on a motion to dismiss, the "plaintiff must plead sufficient factual allegations, taken as true, that 'plausibly suggest' each of these elements." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285 (7th Cir. 2016). Accordingly, this opinion will exam the allegations of injury in the complaint under each element.

I. **Injury**

Plaintiffs Marchese and Goodman maintain that they suffered an Article III "injury in fact" requirement in two way: (1) a procedural injury when Secretary Vilsack considered and appointed Beck and Swaffar to the NOSB; and (2) a substantive injury as organic producers when "[d]efendants' activities weakened the integrity of the organic program and its standards." (Pl.'s Br. (dkt. #25) 10.)

## A. Procedural Injury

In claiming a procedural injury, plaintiffs rely heavily on *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221 (10th Cir. 2004). In *Wenker*, two environmental organizations and two individuals challenged the Secretary of the Interior's appointments to Resource Advisory Councils ("RACs"). The Interior Secretary is required by statute to establish RACs for the purpose of providing recommendations to the Secretary and to the Bureau of Land Management ("BLM") regarding federal land use policy. *Id.* at 1226. In March 2001, the BLM issued a call for nominations to fill 14 vacancies on three such Colorado RACs. *Id.* By the closing date for nominations, the BLM had received 50 applications, including the applications of the two individual plaintiffs in *Wenker* that were accompanied by a *required* letter of recommendation. *Id.* After the close of the nomination period, however, the Colorado Governor submitted a letter listing 13 additional nominees to fill the RAC vacancies. *Id.* That letter did not include any documentation in support of the nominations or the letters of reference required by BLM regulations. *Id.* Perhaps predictably, all 13 of the Governor's nominees and only one of the 50 outside applicants were appointed to RACs. *Id.* Needless to say, neither of the *Wenker* plaintiffs was that one. The Tenth Circuit found that the individual plaintiffs had demonstrated procedural standing based "upon denial of a fair opportunity to compete for a position," because the process had been inappropriately dominated by one interest group (the Governor).[3] *Id.* at 1235-36.

---

[3] Notably, the *Wenker* court affirmed dismissal of all other claims and both organizational plaintiffs. 353 F.3d at 1224.

Here, plaintiffs allege that they were denied a fair opportunity to compete for a position on the NOSB. In particular, plaintiffs argue "governmental barriers that make it more difficult for a certain group to obtain a benefit" give rise to a procedural injury. (Pl.'s Br. (dkt. #25) 14.) Unlike *Wenker*, however, they fail to specify what governmental barrier impeded their applications to the NOSB. Nor have they alleged any facts indicating that the process was dominated by one interest group.

Instead, plaintiffs contend that Secretary Vilsack violated the OFPA by considering applicants who do not meet the statutory requirement for eligibility.[4] Regardless of whether that is true, consideration of more candidates, qualified or not, does not by itself create a *procedural* injury to plaintiffs. Indeed, the Secretary would have to consider all applications as a matter of procedural fairness in order to discern who was a qualified candidate, especially where the claim of ineligibility is as nuanced as plaintiffs claim. Even disregarding the obvious arbitrariness of accepting *every* nomination of a Governor, this by itself distinguishes plaintiffs' claims from those in *Wenker*, where the qualification could not have been any less nuanced -- recommendation letter or no recommendation letter.[5]

---

[4] Defendants contest plaintiffs' claim that Beck and Swaffar fall outside the statutory language of "individuals who own or operate an organic farming operation." 7 U.SC. § 6518(b)(1).

[5] Plaintiffs' reliance on *Bakke v. Board of Regents*, 438 U.S. 265 (1978), is even less availing. *Bakke* considered a challenge to the University of California-Davis's affirmative action program, which reserved 16 out of 100 overall spots for minority candidates, brought by an unsuccessful, majority medical school applicant. The Court found that the injury giving rise to standing was not the denial of admission itself, but rather the denial of the ability to compete for all 100 spots based on an applicant's race. *Id.* at 280 n.14. Plaintiffs have alleged no similar impediment on their ability to compete for positions on the NOSB. The fact that defendants here considered, and ultimately selected, candidates to whom plaintiffs object does not amount to a procedural injury conferring legal standing.

B. "Injury in Fact" Inquiry

All three plaintiffs allege injury stemming from a weakening of "the integrity of organic food standards," which in turn were supposedly caused by the challenged appointments and changes to NOSB procedure. (Am. Compl. (dkt. #17) ¶ 28.) Underlying this claim of injury is plaintiffs' contention that organic farmers suffer reputational harm when "the organic certification label becomes less trustworthy in the eyes of consumers and stakeholders due to action by USDA," and as a result, organic farmers suffer economic harm because consumers "are less likely to purchase organically certified food when that label's integrity has been compromised." (*Id.* at ¶¶ 55, 56.) Goodman and Marchese allege these reputational and economic injuries as organic farmers themselves, while Cornucopia alleges them both on behalf of its members and as an injury to its mission. Unfortunately for plaintiffs, however, the links between defendants' alleged misconduct and their alleged injuries are too attenuated and speculative to meet the requirement of an "injury in fact."

As for being too attenuated, plaintiffs essentially allege that appointments of 2 members of a 15 person board, along with certain procedural changes, have led to a greater number of harmful substances remaining on the National List and to a weakening in the meaning of the USDA organic certification, which then led consumers to place less value on that certification and purchase fewer organic products, leading to economic harm to organic farmers generally and plaintiffs specifically. Maybe so, but then again maybe not, and the Supreme Court has already rejected a theory of standing that "relies on a highly attenuated chain of possibilities," because it is insufficient to demonstrate that injury was "certainly impending." *See Clapper v. Amnesty Inter. USA*, 568 U.S. 398, 133 S. Ct. 1138,

1148 (2013); *see also Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 185 (D.C. Cir. 1977) (rejecting standing in a case where "appellants claim to have been injured on the theory that the challenged structure of the NPC causes it to make certain biased recommendations, which in turn causes government agencies to adopt policies favoring the petroleum industry, which in turn cause the appellants to be injured"). Like *Clapper*, plaintiffs' chain of causation here is further weakened by its reliance on third parties' discretionary acts, linking the defendants' conduct to the alleged harm, by claiming that consumers will chose to purchase different products as a result of the reputational harm to organic products. 133 S. Ct. at 1150 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, No. 13-C-1214, 2014 WL 1056495 (E.D. Wis. Mar. 18, 2014) (finding that plaintiffs alleging harm arising from the ACA tax scheme failed to establish standing by relying on the potential discretionary acts of third party employers and consumers).

As for being too speculative, the complaint alleges both "reputational" and "economic" harm arising out of an undermining of the integrity of organic food standards, but alleges *no* facts at all supporting their claim that these injuries are occurring presently. Indeed, the plaintiff's use of the present tense in describing impacts is odd at best, and other allegations elsewhere in the complaint seem to indicate any claim of current injury is suspect at best. (*See* Am. Compl. (dkt. #17) ¶ 7) ("demand for organic food—free of synthetic ingredients—continues to grow").) The wording of plaintiffs' other allegations in the complaint regarding injuries are equally ambiguous as to whether they assert a present or a future harm: "Cornucopia's . . . members *suffer* a reputational harm . . . because

the organic certification *becomes* less trustworthy[;]" "consumers seeking organic produce are less likely to purchase organically certified food *when* that organic label's integrity has been compromised." (*Id.* at ¶¶ 55, 56 (emphasis added).) Any theory of "*future* injury is too speculative to satisfy the well-established requirement that threatened injury is certainly impending." *Clapper*, 133 S. Ct. at 1143 (citing *Whitmore v. Arkansas*, 495 U.S. 149 (1990)) (emphasis in original).

Plaintiffs counter that courts have recognized the weakening of organic integrity as a cognizable injury to a party that produces or consumes organic foods. For example, in *Harvey v. Veneman*, 396 F.3d 28 (1st Cir. 2005), the First Circuit found an individual who was a producer and consumer of organic products had standing to challenge regulations that "weaken the integrity of the organic program." *Id.* at 34. In *Harvey*, the plaintiff was challenging the Secretary of Agriculture's publication of a final rule related to organic labeling because it included "loopholes concerning nonorganic ingredients and synthetic substances" and "exemptions for wholesalers and distributors." *Id.* at 32. In *Mass. Indep. Certification, Inc. v. Johanns*, 486 F. Supp. 105 (D. Mass. 2007), the court considered an organic certifying agent's challenge to a regulation after being denied the right to appeal USDA organic certifications with which the agent disagreed. Based on *Harvey*, the court found that this weakening in the "'integrity' of the organic program" was a cognizable injury, in part because the scheme would "force [the certifying agent] to affix its certification to products that it believes do not meet the requisite standards." *Id.* at 115. In each of these cases, the nexus between the defendants' conduct and the plaintiffs' injury is *immediate* -- neither *Harvey* nor *Johanns* depended on an attenuated chain of speculative events that plaintiffs present here. Rather, the alleged harm to organics in those cases arose

*directly* from an agency regulation and created an imminent injury to the plaintiffs.

Finally, plaintiffs here point to *Center for Food Safety v. Vilsack*, No. 15-cv-01590, 2016 WL 4698901 (N.D. Cal. Sept. 8, 2016), in which organizational plaintiffs challenged the changes to the NOSB Sunset Review provisions. Although the district court briefly addressed and found a substantive injury arising from these changes, the bulk of the court's injury analysis focused on plaintiff's perceived procedural injury by being denied the opportunity for notice and comment prior to changes in the rule. *Id.* at *3-5. In the present case, plaintiffs do not challenge a lack of notice and comment specifically, but rather the two contested appointments and USDA's alleged undue influence. Plaintiffs' reliance on *Center for Food Safety* again fails to address the attenuated connection between this alleged misconduct and the claimed injury here.

Cornucopia's claim that defendants' behavior led to a drain on its resources fares no better than its claims of broader economic and reputational harm. Cornucopia alleges that it spends around $600 per National List substance it reviews, at an annual expense to the organization of approximately $100,000. (Am. Compl. (dkt. #17) ¶ 43.) Cornucopia does not specifically allege the amount by which this expense has changed as a result of defendants' conduct, simply that "the greater number of chemicals remaining on the National List places a drain on Cornucopia's resources by increasing the number of chemicals Cornucopia has to review," and "[t]he fact that unqualified persons sit on the NOSB in seats reserved for organic farmers exacerbates the harms to Cornucopia from the increased number of chemicals remaining on the list." (*Id.* at ¶¶ 42, 44.)

Unless the harm plaintiffs seek to avoid is "certainly impending," plaintiffs' claim of standing "because they incurred certain costs as a reasonable reaction to a risk of harm

is unavailing." *Clapper,* 133 S. Ct. at 1151. Cornucopia states that it considers its "ability to review each of the substances up for review for the Board and advise its members" essential to its mission. (Am. Compl. (dkt. #17) ¶ 41.) Even so, it appears that the underlying harm it seeks to avoid depends on the same attenuated chain noted previously. Because Cornucopia has not established a "certainly impending" injury, therefore, its choice to expend more resources does not create an injury in fact.

This distinction differentiates the present case from *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), in which the Supreme Court found that a fair housing organization had standing to sue owners and employees of apartment complexes that had allegedly engaged in racially discriminatory "steering" practices. In that case, the Court was satisfied with proof that the defendants' "steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers," which resulted in "the consequent drain on the organization's resources[.]" *Id.* at 379. This was, however, a drain on resources that results from an existing harm, which is a cognizable injury for standing purposes, while the discretionary use of resources in the face of a potential harm is not. *See also Ctr. for Law & Educ. v. U.S. Dept. of Educ.,* 315 F. Supp. 15, 24 (D.D.C. 2004) (agency policy choices that require advocacy organizations to expend more resources in pursuit of their objectives is not an injury in fact "without concrete and demonstrable injury to the groups' activities").

Because plaintiffs are only able to allege attenuated, and ultimately speculative, injuries from defendants' alleged misconduct, they have failed to establish legal standing here.

## II. Fairly Traceable

For several of the same reasons, plaintiffs' causal chain fails to demonstrate that the alleged injury is "fairly traceable" to the alleged misconduct. First, in *Credit Union Nat'l Ass'n, Inc. v. AICPA, Inc.*, 832 F.2d 104 (7th Cir. 1987), the Seventh Circuit noted that even if no particular link in plaintiff's chain of causation was particularly problematic, the overall length of the chain made it "impossible to trace concrete injury to the AICPA's decision[.]" *Id.* at 106-07. Here, as discussed already, plaintiffs allege that the challenged appointments have led to a weakening in the reputation and economic value of organic labeling. To reach that result, the court must accept a chain of allegations and inferences: that Swaffar's and Beck's two votes were decisive among thirteen others on the National Standards Board in keeping certain chemicals on the National List; that those two votes were different from how a typical organic farmer would have voted; that the Secretary adopted the recommendations of the NOSB; that these additional chemicals on the National List are detrimental to the reputation of the USDA organics programs; that consumers are aware and disapprove of these choices; and that consumers chose to buy fewer organic products as a result.

Plaintiffs' claims regarding USDA's undue influence over the NOSB suffer the same deficiency. In order to find plaintiffs' injuries fairly traceable to the alleged misconduct (including the changes to the Sunset Review provision and elimination of the Policy Development Subcommittee), the court must again accept a chain of allegations and inferences: that the additional chemicals that remain on the National List as a result of the changes are detrimental to the organics program; that the changes have caused the NOSB to fail to protect the interests of organic farmers and consumers; that consumers are aware

and disapprove of these failings; that consumers chose to buy fewer organics products as a result; and that therefore plaintiffs suffer economic harm. As in *Credit Union National Association*, the length of plaintiffs' causal chains makes impossible to trace plaintiffs' injuries to defendants' alleged conduct.

Second, plaintiffs rely on the discretionary acts of third parties to link the defendants' conduct to their alleged injury. More specifically, they allege that defendants' conduct has caused significant numbers of consumers to choose to purchase fewer organics. A plaintiffs' causal chain is weakened where it "depends upon countless individual decisions." *Shakman v. Dunne*, 829 F.2d 1387, 1397 (7th Cir. 1987).

### III. Likely to be Redressed

The third requirement of standing is "a likelihood that the injury can be redressed by a favorable decision." *Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000). As it relates to the Beck and Swaffar appointments, plaintiffs' allegations do not demonstrate that their injuries would be redressed by the relief sought. Even if the court ordered the Secretary to remove Beck and Swaffar from the board, there would be no assurance that a differently comprised NOSB would vote more consistently with plaintiffs' ideals. Likewise, even if the court ordered the previous Sunset Review rules and the Policy Development Subcommittee reinstated, there would be no assurance that the NOSB would vote more consistently to remove substances to which plaintiffs object. Moreover, because plaintiffs have not shown that their alleged injuries are fairly traceable to defendants' alleged misconduct, the likelihood appears even more remote that their alleged injuries will be redressed by the specific remedies sought.

Because they have not shown (1) a procedural injury or other injury in fact that (2) is fairly traceable to defendants' conduct and (3) is likely to be redressed by the relief sought, neither Marchese, Goodman, nor Cornucopia have standing to sue on their own behalf. In addition, because Cornucopia's claims on behalf of other of its members would suffer the same deficiencies, Cornucopia lacks associational standing to bring these claims as well. Therefore, the court grants defendants' motion to dismiss for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction (dkt. # 23) is GRANTED. The clerk of court is directed to close this case.

Entered this 23rd day of May, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge